UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY BENGE, | 1:06-cv-01071-SMS |
| Plaintiff, | DECISION AND ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY COMPLAINT (DOC. 1) |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ORDER DIRECTING REMAND PURSUANT TO SENTENCE FOUR of 42 U.S.C. § 405(g) |
| Defendant. | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT FOR PLAINTIFF WESLEY BENGE AND AGAINST DEFENDANT MICHAEL J. ASTRUE |

Plaintiff is proceeding in forma pauperis and with counsel with an action in which Plaintiff seeks judicial review of a decision of the Commissioner of Social Security (Commissioner)[1] in which Plaintiff's application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (the Act) was denied. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[2] The matter is currently before the Court

---

[1] Michael J. Astrue is substituted for his predecessor as Commissioner of the Social Security Administration. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

[2] On November 30, 2006, pursuant to the consent of the parties, the Honorable Anthony W. Ishii ordered the case assigned to the undersigned Magistrate Judge.

1

on the parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

## I. Procedural Summary

Plaintiff was originally found disabled as a child under the age of eighteen; after attaining the age of eighteen, Plaintiff's disability was re-evaluated and was found to have ceased as of May 2003. (A.R. 16, 31-36.) Plaintiff's request for reconsideration was denied, and Plaintiff requested an administrative hearing. (A.R. 37-42, 66.)

Represented by a non-attorney, Plaintiff appeared and testified at a hearing held before Administrative Law Judge (ALJ) Mark C. Ramsey on June 1, 2005; Plaintiff's grandmother also testified. (A.R. 16, 188-218.) On August 20, 2005, the ALJ issued a written decision denying Plaintiff's application for benefits. (A.R. 16-21.) Plaintiff's request for review by the Appeals Council was denied on May 25, 2006. (A.R. 11-12, 6-8.)

Plaintiff filed the present action on August 9, 2006, after the Appeals Council granted Plaintiff an extension of time to file his complaint. (A.R. 4.) Plaintiff's opening brief was filed on December 28, 2006; Defendant's brief was filed on February 28, 2007; and Plaintiff's reply brief was filed on February 28, 2007.

## II. Scope and Standard of Review

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).

1  Substantial evidence means "more than a mere scintilla,"
2  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a
3  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
4  (9th Cir. 1975). It is "such relevant evidence as a reasonable
5  mind might accept as adequate to support a conclusion."
6  Richardson, 402 U.S. at 401. The Court must consider the record
7  as a whole, weighing both the evidence that supports and the
8  evidence that detracts from the Commissioner's conclusion; it may
9  not simply isolate a portion of evidence that supports the
10 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.
11 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It
12 is immaterial that the evidence would support a finding contrary
13 to that reached by the Commissioner; the determination of the
14 Commissioner as to a factual matter will stand if supported by
15 substantial evidence because it is the Commissioner's job, and
16 not the Court's, to resolve conflicts in the evidence. Sorenson
17 v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).
18     In weighing the evidence and making findings, the
19 Commissioner must apply the proper legal standards. Burkhart v.
20 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
21 review the whole record and uphold the Commissioner's
22 determination that the claimant is not disabled if the
23 Commissioner applied the proper legal standards, and if the
24 Commissioner's findings are supported by substantial evidence.
25 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d
26 509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If
27 the Court concludes that the ALJ did not use the proper legal
28 standard, the matter will be remanded to permit application of

the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

### III. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a

4

magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations; 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work; and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy. See 20 C.F.R. § 416.920.[3]

Here, Plaintiff was twenty years old at the time of the hearing; Plaintiff was in a special education program at school, did not complete the eleventh grade, read only words but not sentences at an eighth grade level, and had no significant work history other than two six-month work study programs at school. (A.R. 191-96, 199, 201.) The ALJ found that although Plaintiff had severe attention deficit hyperactivity disorder, Tourette's syndrome, and a non-specific learning disorder, he did not have an impairment or combination thereof that was listed or medically equal to a listed impairment; Plaintiff had the residual functional capacity (RFC) to perform the nonexertional requirements of simple, unskilled work, and there were no exertional limitations. Using grid rule 204.00 as a framework for decision making, the ALJ concluded that as a younger individual with a limited education but without transferable skills,

---

[3] All references are to the 2005 version of the Code of Federal Regulations unless otherwise stated.

1  Plaintiff was not disabled. (A.R. 18, 20.)

2       IV. Opinion of the Examining Physician

3       Plaintiff's primary contention is that the ALJ failed
4  properly to consider the opinion of examining physician Michael
5  G. Musacco, Ph.D., because the ALJ 1) mischaracterized the
6  opinion and thus impermissibly dismissed it with respect to
7  Plaintiff's ability to perform unskilled work at a consistent
8  pace in a work setting, and 2) failed to address Dr. Musacco's
9  opinion that Plaintiff might have difficulty developing skills or
10 motivation in order to manage the demands of a work environment
11 and thus should be referred to the Department of Rehabilitation
12 in order to develop job skills. Plaintiff argues that because the
13 ALJ failed to consider and discuss these matters, the ALJ failed
14 to articulate specific and legitimate reasons for rejecting the
15 opinion.

16      It is established that the opinion of an examining physician
17 is entitled to greater weight than the opinion of a nonexamining
18 physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The
19 uncontradicted opinion of an examining physician may be rejected
20 only if the Commissioner provides clear and convincing reasons
21 for rejecting it. Id.; Edlund v. Massanari, 253 F.3d 1152, 1158-
22 59 (9th Cir. 2001). An ALJ may reject the opinion of an examining
23 physician and adopt the contradictory opinion of a nonexamining
24 physician only for specific and legitimate reasons that are
25 supported by substantial evidence in the record. Moore v.
26 Commissioner of Social Security Administration, 278 F.3d 920, 925
27 (9th Cir. 2002) (quoting Lester v. Chater, 81 F.3d at 830-31).

28      In his report (A.R. 130-36), Dr. Musacco noted that

Plaintiff's attention wandered during the evaluation, and attention deficits negatively impacted his performance on the psychological testing. (Id. at 132.) With respect to intelligence testing, Plaintiff did least well on tasks measuring his attention-concentration skills (arithmetic and digit symbol-coding subtests); his overall performance on the Wechsler Adult Intelligence Scale, third edition (WAIS-III) revealed average intelligence with relative deficits in attention-concentration skills. (Id. at 132-33.) Dr. Musacco diagnosed attention-deficit/hyperactivity disorder, inattentive type; Tourette's disorder in treatment remission; cannabis dependence; and learning disorder, not otherwise specified (provisional). (Id. at 134.) Dr. Musacco concluded that deficits in Plaintiff's attention and concentration would impact his persistence and pace in a work environment. (Id.) Because Plaintiff's lifestyle was significantly under-productive (i.e., he did not engage in any work-related activities)[4], and further because he had never held competitive employment, he might have difficulty developing skills or motivation in order to manage the demands of a work environment. Dr. Musacco recommended that he should be referred to the Department of Rehabilitation in order to help him develop job skills. (Id. at 134-35.) Dr. Musacco also concluded that Plaintiff could understand, remember, and carry out simple

---

[4] The Court notes that both the ALJ (A.R. 17) and the Defendant (Brief p. 5) erroneously describe Plaintiff's report of daily activities as including shopping and laundry; instead, Dr. Musacco noted that Plaintiff reported watching television, drawing, and cooking, but he did not drive, shop for groceries, or complete laundry. (A.R. 131.) Dr. Musacco also noted that daily activities questionnaires completed by Plaintiff and his grandmother indicated that Plaintiff cooked (eggs, sandwiches, cereal, TopRamen, soup, and meat), was being taught to do laundry, and engaged in sedentary activities one task at a time, with a need for instructions after every discrete task. (A.R. 133-34, 81-92.)

7

instructions; Dr. Musacco did not see evidence of symptoms that would prevent Plaintiff from responding appropriately to co-workers, supervisors, and the public, or evidence that Plaintiff would be unable to respond appropriately to usual work situations or dealing with changes in a routine work setting. (Id. at 134-35.)

In considering whether Plaintiff suffered from a listed impairment, the ALJ expressly found that Plaintiff suffered some attention and concentration deficits of a moderate severity in view of his attention deficit disorder. (A.R. 18.) In connection with the RFC analysis, despite Plaintiff's living in a sober living facility and having repeatedly failed drug tests during his probation, the ALJ rejected the diagnosis of marijuana dependence consistently reflected in the medical records because Plaintiff had been clean and sober for a considerable period of time [two or three months] while residing in a drug recovery program. (Id. 19.) The ALJ also concluded that Plaintiff's Tourette's syndrome did not cause any significant impairment of his capacity for basic work activities. (Id.) He stated that the record showed that Plaintiff was impaired because of attention deficit/hyperactivity disorder and a non-specific learning disorder, which the ALJ found was consistent with Plaintiff's educational history involving special education classes and a lack of relevant work history. (Id.) The ALJ stated:

> However, the undersigned is persuaded by the medical source statement provided by the examining consultative psychologist who concluded that despite the claimant's mental disorders he remain (sic) capable of understanding, remembering and carrying out simple instructions but that he was otherwise unlimited in his

8

work capacity (see Exhibit 24/5,6).

(A.R. 19.)

The ALJ's reference was to the report of Dr. Musacco. Review of that report shows that the ALJ's conclusion regarding the substance of Dr. Musacco's opinion was not supported by substantial evidence. As the previous factual summary reflects, although Dr. Musacco did conclude that Plaintiff had the capacity to understand, remember, and carry out simple instructions, the doctor did not opine that Plaintiff was otherwise unlimited in his work capacity. To the contrary, the doctor concluded that Plaintiff needed rehabilitation before he could muster the skills and motivation needed to manage the demands of a work environment. The doctor expressly stated that Plaintiff's attention deficits negatively impacted even his performance on the psychological testing; further, although Plaintiff's intelligence was average, he had relative deficits in attention and concentration skills. (A.R. 132-33.)

With respect to recommendations, Doctor Musacco expressly stated that Plaintiff's attention and concentration deficits would impact his persistence and pace in a work environment. (A.R. 134.) Further, the ALJ's conclusion that Plaintiff's work capacity was otherwise unlimited was clearly inappropriate in view of the doctor's statement that Plaintiff had not held competitive employment and might "have difficulty developing skills or motivation in order to manage the demands of a work environment." (A.R. 135.) The doctor's recommendation was obviously predicated upon the belief that Plaintiff needed to develop skills in order to manage the demands of a work

9

environment. Further, in light of the doctor's recommendation that Plaintiff be referred to rehabilitation in order to develop job skills, it was unreasonable to interpret the doctor's opinion as stating that the only limitation of Plaintiff's work capacity was a limit to the universe of simple, repetitive tasks.

The Court will look beyond the precise wording of the report to the text of the regulation concerning concentration, persistence, and pace in the context of the severity of an impairment. It appears that Defendant's argument is based on an erroneous concept of simplicity of tasks, on the one hand, and attention or concentration, persistence, and pace on the other. Simplicity of tasks is a different factor from concentration, persistence, and pace. Title 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(3) states that concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. The regulation states in part:

> On mental status examinations, concentration is assessed by tasks such as having you subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits.
> <u>In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks</u> (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). <u>Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.</u>
> <u>We must exercise great care in reaching conclusions</u>

10

> about your ability or inability to complete tasks under
> the stresses of employment during a normal workday
> or work week based on a time-limited mental status
> examination or psychological testing by a clinician,
> or based on your ability to complete tasks in other
> settings that are less demanding, highly structured,
> or more supportive. We must assess your ability
> to complete tasks by evaluating all the evidence,
> with an emphasis on how independently, appropriately,
> and effectively you are able to complete tasks on a
> sustained basis.
> We do not define "marked" by a specific number of
> tasks that you are unable to complete, but by the
> nature and overall degree of interference with function.
> You may be able to sustain attention and persist at
> simple tasks but may still have difficulty with
> complicated tasks. Deficiencies that are apparent
> only in performing complex procedures or tasks
> would not satisfy the intent of this paragraph
> B criterion. However, if you can complete many
> simple tasks, we may nevertheless find that you
> have a marked limitation in concentration, persistence,
> or pace if you cannot complete these tasks without
> extra supervision or assistance, or in accordance
> with quality and accuracy standards, or at a consistent
> pace without an unreasonable number and length of rest
> periods, or without undue interruptions or distractions.

(Emphasis added.)

This text makes it clear that the mere fact that an applicant can perform simple tasks does not address key aspects of functional limitations relating to deficiencies in concentration, persistence, or pace.

The Court finds no Ninth Circuit case on point. The distinction between simplicity of tasks and concentration, persistence, and/or pace to complete such tasks has been recognized in Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996) (holding that an ALJ's finding on a psychiatric review technique form that the claimant would often manifest deficiencies of concentration, persistence of pace resulting in failure to complete tasks in a timely manner was not adequately presented when the ALJ's hypothetical limited the claimant to simple jobs).

Further, the Ninth Circuit has cited this holding with apparent approval in Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) in the course of an analysis of whether a hypothetical included sufficient reference to functional limitations based on deficiencies of concentration, persistence, or pace; the court in Thomas contrasted the Newton case with the case before it, in which express reference to deficiencies in concentration, persistence, and pace "often" had been presented to a testifying vocational expert by way of a doctor's testimony and exhibits. Thomas v. Barnhart, 278 F.3d at 956.

Thus, the pertinent question is whether Plaintiff can perform simple, repetitive tasks in a timely and appropriate manner in view of his limited ability to sustain focused attention and concentration. The limit to unskilled work was not sufficient to address Plaintiff's limited ability to concentrate and maintain attention.

Accordingly, Dr. Musacco's opinion did not constitute substantial evidence upon which to base a conclusion that Plaintiff had the capacity to perform work involving simple, repetitive tasks.

A fundamental principle of review operative in this case is that this Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons that the ALJ asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (holding in part that the mere presence of evidence in the record that would support an ALJ's conclusions, in the absence of the ALJ's discussion thereof, was insufficient). An ALJ need not discuss evidence that is neither significant nor probative.

Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). However, with respect to significant, probative evidence, such as an expert opinion, an ALJ must explicitly reject the opinion and set forth specific reasons of the requisite force for doing so. Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that the ALJ erred in failing to explicitly reject an opinion and set forth specific, legitimate reasons for crediting another opinion). The district court cannot make findings for the ALJ. Id. A district court cannot affirm the judgment of an agency on a ground the agency did not invoke in making its decision. Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). The authorities thus reflect the fundamental principle that the ALJ's opinion must contain sufficient findings to permit intelligent judicial review, particularly with respect to significant probative evidence. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

Here, the ALJ clearly found the opinion to be significantly probative but failed to consider and state specific, legitimate reasons for rejecting this portion of the doctor's opinion.

Defendant appears to mount an argument that there is other substantial evidence in the record to support the ALJ's decision that Plaintiff could perform unskilled work.

In addition to Dr. Musacco's opinion, Defendant cites to the opinion of Dr. Luu, a non-treating, non-examining state agency physician. (Brief pp. 5-6, 8.) Dr. Luu rendered an opinion in May 2003. (A.R. 137-146.) With respect to Plaintiff's RFC, Dr. Luu noted the moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods; the doctor also stated that Plaintiff could understand and remember adequately to

13

perform simple routine and repetitive tasks, nothing complex, and could sustain concentration and persistence for two-hour intervals. (A.R. 137-39.)

The opinion of a non-treating, non-examining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as the opinions of other examining and consulting physicians, which are in turn based on clinical findings independent of any contrary opinion. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

Here, the record contains no opinion of an examining or treating physician regarding Plaintiff's ability to perform unskilled work involving simple, repetitive tasks despite his limitations in concentration/attention, persistence, and/or pace. There were no findings before the state agency physician warranting the doctor's conclusion that Plaintiff could maintain adequate attention for two-hour intervals. Dr. Luu's opinion regarding ability to interact with supervisors and peers and adapt to normal work environment situations at the SRT level (A.R. 139) pertains to social functioning, but not in any significant respect to Plaintiff's problems concerning concentration, persistence, or pace, which relate to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. See, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(2) and (3).

Defendant refers to the later report of examining psychiatric consultant Dr. Feldman, and the ALJ's reference to

that report. (Brief pp. 3, 6; A.R. 17.) The ALJ noted that Dr. Feldman reported in November 2003 that Plaintiff exhibited no tics or other abnormal motor restlessness; Plaintiff was oriented as to place and person but not date; Plaintiff could recall three out of three words after three minutes; Plaintiff had average intelligence; Plaintiff's short-term memory was intact, although his long-term memory appeared vague and possibly impaired; there was no significant depression; there was no evidence of homicidal or suicidal thoughts although there were complaints of possible hallucinations regarding ghosts (Brief pp. 3, 6; A.R. 159-61; and, the ALJ concluded, it appeared that Plaintiff was having trouble mobilizing[5] himself in "transitioning to a functioning (Exhibit 28)." (A.R. 17.) The ALJ did not complete the sentence, but it appears that he was referring to Dr. Feldman's conclusion that Plaintiff might also benefit from counseling "to assist in his transition from seeing himself as a disabled person, towards seeing himself as a potentially functioning adult, albeit with some limitations." (A.R. 161.)

The ALJ mentioned this report in the context of his analysis at step two concerning the severity of Plaintiff's impairments. (A.R. 17-18.) Dr. Feldman did not render an opinion regarding Plaintiff's RFC; the examination was apparently undertaken with reference to Plaintiff's having to perform 300 hours of community service for burglary and possession of stolen goods. (A.R. 159.) Dr. Feldman noted that the requirement for community service was an "unavoidable mandate," and he stated that he would provide

---

[5] The ALJ referred to Plaintiff's difficulty "motivating" himself, but Dr. Feldman's report referred to Plaintiff's appearing "to have ongoing difficulties mobilizing himself towards an adult life style." (A.R. 17, 161.)

1  Plaintiff's grandmother a letter in which Plaintiff's limitations
2  were detailed. (A.R. 161.)[6] Dr. Feldman assigned a global
3  assessment of functioning (GAF)[7] of 45 to Plaintiff. (A.R. 161.) A
4  GAF of 45 reflects serious symptoms or any serious impairment in
5  social, occupational, or school functioning, such as inability to
6  keep a job. American Psychiatric Association, <u>Diagnostic and
7  Statistical Manual of Mental Disorders</u> at 32 (4th ed.).

   Further, the Court notes that an ALJ may not selectively focus on aspects of an expert's report that tend to suggest non-disability, such as ignoring express limitations of function and medical findings relevant to such limitations. <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1067 (9th Cir. 2006). If an ALJ does so, then his decision is not supported by substantial evidence. <u>Id.</u>

   Defendant also points to the ALJ's mention of a single entry in a check-off form constituting an anonymous progress note from Kern County Mental Health in February 2004 to the effect that Plaintiff's attention was intact. (Brief p. 6, A.R. 17, 179-80.) The doctor concluded that Plaintiff was severely disabled, was unable to work, and had a poor prognosis. (A.R. 179-80.) The ALJ mentioned it in the course of the analysis of the severity of Plaintiff's impairments.

   In contrast to the discussion of the severity of Plaintiff's impairments, the only expressed bases for the ALJ's

---

[6] It does not appear that this letter is included in the record; no party has cited to it.

[7] A GAF, or global assessment of functioning, is a report of a clinician's judgment of the individual's overall level of functioning and is used to plan treatment and to measure the impact of treatment as well as predicting its outcome. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> at 30 (4th ed.).

16

determination of Plaintiff's RFC were the opinion of Dr. Musacco, which the ALJ erroneously perceived was to the effect that Plaintiff's only limitation was the limit to simple, repetitive tasks, and the report of Dr. Luu. (A.R. 18-19.)

The ALJ's rejection of the opinion of Dr. Keni (A.R. 19, 183-86) does not amount to an affirmative finding regarding substantial evidence that would support the ALJ's RFC; rather, it was merely a rejection of a contrary opinion.[8] This Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons that the ALJ asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (holding that the ALJ's statement of what evidence was not credible and what evidence suggested the lack of credibility sufficed as specific findings or reasons for rejecting a claimant's testimony, but holding that the mere presence of evidence in the record that would support an ALJ's conclusions, in the absence of the ALJ's discussion thereof, was insufficient). The district court cannot make findings for the ALJ. Id.

Accordingly, the ALJ's conclusion that Plaintiff could perform unskilled work lacked the support of substantial evidence in the record.

---

[8] Dr. Keni reported on June 27, 2005, that Plaintiff could not care for himself independently, needed close supervision, and needed SSI because he was not capable of sustaining employment due to lack of concentration and attention in attaining and performing employment, as well as lack of insight or judgment in maintaining it. (A.R. 183-86.) The ALJ rejected Dr. Keni's opinion because it was inconsistent with "the record presented here" and with an essentially normal mental status examination. (A.R. 19.) The Court notes that Dr. Keni's report does not reflect any notation concerning Plaintiff's attention, concentration, or persistence or pace (other than a general statement that Plaintiff's memory (type unspecified) seemed to be adequate; there is no indication of what precise form of examination or tests, if any, were administered. There was no diagnosis relating to Plaintiff's attention deficit disorder. (A.R. 185.)

### IV. Remedy

Plaintiff concedes that this Court could remand this case for further proceedings; however, Plaintiff argues that the Court should reverse and compel an award of benefits.

A district court is authorized to affirm, modify, or reverse a decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The decision whether to remand a matter pursuant to sentence four of § 405(g) or to order immediate payment of benefits is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Generally, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed. Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399 (9th Cir. 1988). An immediate award of benefits should be directed where 1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence of a treating or examining physician, 2) there are no outstanding issues that must be resolved before a determination of disability can be made, and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Here, the ALJ credited but misinterpreted the opinion of Dr. Musacco; the ALJ thus did not fully evaluate the opinion. It cannot be known upon remand what findings the ALJ will make and what process (reconsideration, further development of the record, etc.) will be followed. However, it is also possible that the ALJ

will articulate legally adequate reasons for rejecting the limitations inhering in Dr. Musacco's opinion. At this point it does not appear to be clear from the record that the ALJ would be required to find Plaintiff disabled if he credited part of the opinion of Dr. Musacco and rejected limitations with an additional statement of reasons. Accordingly, it does not appear that an order requiring an award of benefits is appropriate; rather, the matter should be remanded for further consideration.

V. <u>Disposition</u>

Based on the foregoing, the Court concludes that the ALJ's decision was not supported by substantial evidence in the record as a whole and was not based on proper legal standards.

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED, and

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this decision, of Plaintiff's status as disabled, including Plaintiff's residual functional capacity in light of his impairments, and, if appropriate, whether on the basis of the Plaintiff's age, education, work experience, and residual functional capacity, he could perform any other gainful and substantial work within the economy; and

3. Judgment BE ENTERED for Plaintiff Wesley Benge and against Defendant Michael J. Astrue.

IT IS SO ORDERED.

**Dated:   November 27, 2007**          /s/ Sandra M. Snyder
                                         UNITED STATES MAGISTRATE JUDGE

19